## Commonwealth v. Sebastian

*Gaylor Dissinger, Chief Deputy District Attorney*, for Commonwealth.

*M. Mark Mendel*, for defendant Helen Sebastian.

*Gilbert B. Abramson*, for defendant Stephen Sebastian.

*Paul N. Sandler*, for defendant Bobby Harper.

LIPSITT, *J.*, July 10, 1978—On May 30, 1978, a jury trial commenced before Judge Richard B. Wickersham against three defendants, Helen A. Sebastian, Stephen Joseph Sebastian and Bobby J. Harper, on charges of theft by deception and criminal conspiracy. On the second day of the proceeding, a mistrial was declared. Now before the court is defendant's motion to dismiss on the ground of the constitutional prohibition against double jeopardy.

The criminal conduct at issue entails a sophisticated check-kiting conspiracy involving defendants, four Pennsylvania banks and one Vivian Stuber. According to the informations the mechanics of the alleged scheme began when defendants wrote checks totaling $11,100 which exceeded the actual funds in the drawer's checking account at the Union Bank of Bethlehem. Defendants then deposited the checks in an account at the Farmers

Bank and Trust Company of Hummelstown (Dauphin County), Linglestown Branch. Before the worthlessness of the checks was discovered, defendants withdrew $11,100 in currency from the account.

In a similar manner it is alleged defendants wrote checks totaling $23,900 drawn from the Bank of Pennsylvania in Bethlehem. Pursuant to defendants' direction, Vivian Stuber deposited the checks in her account with Commonwealth National Bank of Lancaster, Park City Branch, later withdrew $23,831 in the form of cash and a check, and finally delivered the cash and check to co-defendant, Helen A. Sebastian, in Lower Paxton Township, Dauphin County.

On May 31, 1978, after the jury had been impaneled and sworn and testimony begun, defendants moved for recusal of Judge Wickershom on the ground of apparent conflict of interest. Defendants based their motion on the employment of the judge's wife as a salaried commercial loan officer for Commonwealth National Bank at its downtown Harrisburg Branch. Defendants strenuously argued her employment by a victim of the crime and potential recipient of restitution created a sufficient appearance of conflict of interest to require recusal. Judge Wickersham sustained defendants' motion and declared a mistrial.

Defendants advance their present argument on the generally accepted principle that jeopardy attaches to defendants when a jury is impaneled and sworn. See Serfass v. United States, 420 U.S. 377, 388 (1975). They acknowledge the rule that when a mistrial is granted on a defendant's motion, the double jeopardy clause ordinarily does not bar retrial. See United States v. Scott, 46 U.S.L.W. 4653,

4656 (1978); Com. v. Bolden, 472 Pa. 602, 638, 373 A. 2d 90 (1977). However, defendants rely on the declaration in United States v. Scott, supra, at 4656, where the Supreme Court postulated that if a governmental official, here the trial court, deports in a manner intended to provoke mistrial requests, the double jeopardy clause bars a second prosecution.

The Pennsylvania Supreme Court, in a plurality opinion, extended the rule to bar reprosecution when a defendant's mistrial motion is occasioned not only by intentional but also grossly negligent judicial overreaching. See Com. v. Bolden, supra, at 640-641, 651. All of the parties agree the more stringent Pennsylvania standard present in Bolden is applicable.

Defendants aver Judge Wickersham's conduct constituted overreaching and his failure to inform counsel of his alleged conflict of interest prior to trial constituted at least gross negligence. Defendants specifically have asserted five instances of judicial misconduct constituting overreaching and demonstrating Judge Wickersham's lack of impartiality.

The first misconduct is said to have occurred at the traditional introduction of the attorneys to prospective jurors. The defense counsel had requested they not be identified as out-of-county counsel; the judge introduced them as members of the Philadelphia Bar. This ceremonial function merely acquainted the prospective jurors with the attorneys. Defendants could not have been prejudiced by the introduction.

Second, Judge Wickersham limited the scope of the voir dire examination by the defense on three occasions. Limitations on voir dire questions are

clearly within the sound discretion of the trial judge: Com. v. Sparrow, 471 Pa. 490, 501, 370 A. 2d 712 (1977). A review of the record reveals no palpable error nor abuse of discretion which harmed defendants.

Third, during voir dire the trial judge was asked to rule on the right of the defense attorneys to examine documents used by the district attorney containing biographical information of the prospective jurors. There was a dispute between the two sides as to whether the documents were the jury questionnaires sent out by Dauphin County or the district attorney's written analysis of the responses to those questionnaires, constituting the district attorney's work product. However, pursuant to Judge Wickersham's order the official jury questionnaires were made available to defense counsel for use during voir dire. Thus, there could be no imputation of judicial overreaching.

Fourth, following a disagreement over a defense application for sequestration of all witnesses, Judge Wickersham denied the request. This judicial decision under the prevailing circumstances would not constitute a clear abuse of discretion. See Com. v. Howard, 226 Pa. Superior Ct. 22, 26, 312 A. 2d 54 (1973), cert. den. Howard v. Pennsylvania, 419 U.S. 900 (1974).

Fifth, defendants contend they were prejudiced following a defense request to recess to chambers when the court informed the jury a discussion begun at side bar would continue in chambers, because "counsel" believed the jury may be overhearing some of the argument. The defense urge the jury believed the word "counsel" referred only to defense counsel and defendants would be unex-

plainably hurt if the jurors learned who sought the recess. This reasoning is without merit.

A scrutiny of the five instances of alleged over-reaching could only reach the conclusion that the judge conducted himself well within the bounds of judicial propriety. The sole issue remaining concerns the judge's handling of the conflict of interest question.

The Code of Judicial Conduct, adopted by the Supreme Court of Pennsylvania, Canon 3 C, Disqualification, provides in pertinent part:

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, . . .

"(c) he knows that . . . his spouse . . . has a substantial financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

"(d) . . . his spouse . . .

"(i) is a party to the proceeding, or an officer . . . of a party; . . .

"(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding . . ."

Additionally, Canon 2 requires that "A judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Since defendants maintain they first learned of Mrs. Wickersham's position with the bank from an

independent source after trial had commenced, there also arises the point whether Judge Wickersham committed grossly negligent overreaching by failing to inform defendants of the relationship.

Mrs. Wickersham did not have a "financial interest" as defined by Canon 3 C(3)(c). Her salaried position would be unaffected by the potential of $23,831 in restitution to a bank the magnitude of Commonwealth National. As an employe in the loan department she would have limited duties compared to an officer with managerial responsibility. Further, the crime in question did not occur at the branch where she works but rather at a branch in another county. Moreover, while Commonwealth National Bank is named as the victim in the information, it is not a litigating party in the proceeding.

For situations apposite the current predicament, i.e., the effect of a judge's relationship with employes of a crime victim, the rules are not defined. When the court's connection to a litigation is remote and tenuous, resolution of the problem of recusal is indeed subtle. Included in the judge's considerations are the needs of judicial economy which dictate a trial judge should not lightly elect to withdraw from a case: Com. v. Conrad, 241 Pa. Superior Ct. 324, 328, 361 A. 2d 421 (1976). Also the demands for recusation can be used as an indirect means of attempting to choose the judge who will sit on the case. And a judge must have doubts about his impartiality. See The Function of the Trial Judge, American Bar Association, Approved Draft (1972), §1.7, pages 34-36.

Considering the dubiosity surrounding the law and the various concerns facing the trial court, Judge Wickersham's failure to inform defendants

of his abstruse association was not intentional or grossly negligent judicial overreaching preventing reprosecution.

Accordingly, we enter the following

### ORDER

And now, July 10, 1978, defendants' motion to dismiss for defendants' being twice placed in jeopardy is denied.