393 A.2d 13

**COMMONWEALTH of Pennsylvania**

v.

**Charles M. CARTER, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 21, 1978.

Decided Oct. 5, 1978.

Eugene H. Clarke, Jr., Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Jane C. Greenspan, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant, Charles M. Carter, was convicted in a nonjury trial of murder of the third degree and possession of a prohibited offensive weapon. He was sentenced to a term of imprisonment from six to fifteen years on the murder conviction and to a concurrent term of two and one-half to five years on the other conviction.[1]

The prosecution emanated from the fatal shooting of Nathaniel Browning about 10:20 p. m. on October 15, 1975, at the intersection of 52nd and Jefferson Streets in Philadelphia, shortly after a Buick Riviera, operated by the victim Browning, collided with the rear of a Blue Volkswagon, operated by Carter. At trial, Carter testified and admitted firing the fatal shot, but claimed he did so in self-defense.

In this appeal, Carter contends the Commonwealth failed to meet its burden of proving the shooting was not in self-defense. Cf. *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975). We disagree.

Louis Grass, a Philadelphia police officer, while proceeding in his automobile for duty at his precinct, was an eyewitness to the shooting and described the event as a Commonwealth witness at trial. He testified that he observed Carter alight

1. An appeal from the judgment imposed on the murder conviction was filed in this Court. An appeal from the judgment imposed on the prohibited weapons conviction was timely filed in the Superior Court, and we later granted Carter's petition to consolidate and resolve both appeals here.

from the Volkswagon and approach the Buick, which was standing on the street immediately to the rear of Carter's vehicle; that he heard a shot and then observed Carter fire two shots into the Buick in the direction of Browning; that Carter then re-entered the Volkswagon and fled the scene with Officer Grass in pursuit; that Carter finally stopped and fled on foot, abandoning the Volkswagon, but two other occupants were seized by Officer Grass. Carter was taken into custody about 1:30 p. m. on October 21, 1975.

Carter testified that he and Browning had a fight prior to the collision of the vehicles at the intersection, during which Browning threatened him; that, during this altercation, he noticed a gun in Browning's pocket;[2] that, after the collision and as he approached the Buick, Browning fired a shot at him and he fired a shot in return; that the Buick then started to back up and, believing Browning intended to run him down, he fired another shot in Browning's direction.

Even assuming Carter's testimony was sufficient to establish a valid claim of self-defense, the factfinder had the prerogative of disbelieving Carter's testimony and basing his verdict on the testimony of Officer Grass. See *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977). See also *Commonwealth v. Lynch*, 477 Pa. 390, 383 A.2d 1263 (1978). Officer Grass's testimony in itself was adequate to warrant a finding that the shooting was not in self-defense.

Carter next complains the trial evidence warranted, at most, a finding of voluntary manslaughter. In furtherance of this position, Carter maintains, as he testified at trial, that he was in fear of his life when he shot at Browning; that this fear motivated his actions; and, that, even if this fear were unreasonable, the crime would still be voluntary manslaughter. Cf. *Commonwealth v. Monroe*, 457 Pa. 590, 322 A.2d 100 (1974). See also 18 Pa. C.S.A. § 2503(b).

Murder of the third degree is an unlawful killing with malice expressed or implied, but absent any specific

2. The police found a "starter pistol" on Browning, but it was incapable of being loaded or fired.

intent to take a life. *Commonwealth v. Nau*, 473 Pa. 1, 373 A.2d 449 (1977). The hallmark of the crime of voluntary manslaughter, as distinguished from murder, is the lack of malice in the legal sense of that term. *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573, *cert. den. sub nom. Robson v. Pennsylvania*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975). We are convinced from our examination of the record that the evidence was sufficient to permit the trial court to find the presence of malice necessary for murder of the third degree. This is especially clear in light of Officer Grass's testimony, and from the fact that malice "is properly implied when a deadly weapon is directed to a vital part of the body." *Commonwealth v. Palmer*, 448 Pa. 282, 288, 292 A.2d 921, 923 (1972).

■ Carter's next contention is that his arrest was without probable cause. Since the arrest was ordered by a superior police officer after he had received a detailed report of the incident from the eyewitness Grass, this complaint is frivolous. See *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977).

■ Carter finally contends that statements made after his arrest should have been suppressed [3] as the products of unnecessary delay between arrest and arraignment in violation of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and Pa.R.Crim.P. 118 (now Pa.R.Crim.P. 130). In this regard, we first note that the findings of fact of the suppression court are supported by the record and thus will not be disturbed by us on appeal. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). Carter was arrested on October 21, 1975, at approximately 1:30 p. m.,[4] arrived at the Police Administration Building at 2:50 p. m., and was first

---

3. A motion to suppress was denied after an evidentiary hearing.

4. Although this important fact was omitted from the findings of fact of the suppression court, we have examined the record ourselves and are satisfied that this is the correct time. See N.T.S.H. (January 28, 1976) at 50–51. It is also the time stated in appellant's brief at 17. See *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Smith*, 470 Pa. 220, 368 A.2d 272 (1977).

questioned beginning at 3:55 p. m. After having been given *Miranda* warnings and affirmatively indicating he understood his rights, Carter told the police his version of the shooting. This statement (first statement) was recorded and, after having been stenographically transcribed, was signed by Carter at 5:20 p. m. His account of the event at this time was essentially the same as his testimony at trial.

Following the signing of this first statement, Carter was asked if he would undergo a polygraph examination and he assented. Following the completion of this test, Carter was informed that the results indicated the first statement was not correct. Carter agreed this was true as to some details. He then made another statement (second statement) beginning about 9:10 p. m., which was completed and signed before 9:25 p. m. In this second statement, Carter did not say Browning fired any shots and, in this respect, this statement differed from his trial testimony and his first statement. However, in this second statement, Carter still maintained he fired the final shot because he thought Browning was going to run him down with his vehicle.

Thereafter, or about 10:30 p. m., as Carter was being escorted to a cell room by a Detective Zucher, he spontaneously said (third statement) that Zucher had been square with him and then proceeded to tell Zucher where the gun used in the shooting could be found.

■ The relevant time period in evaluating Carter's *Futch* complaint is that between the arrest and the first self-incrimination (*Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974)) or two hours and twenty-five minutes. Evidentiary use of the first statement did not, therefore, violate the *Futch* rule. *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975).

■ While the second statement was given about seven and one-half hours after Carter's arrest, about five hours after he was first questioned, we are not persuaded permitting its evidentiary use constituted reversible error.

As noted before, Carter's first statement and self-incrimination occurred two hours and twenty-five minutes after his arrest. He then voluntarily submitted to a polygraph examination to establish the truthfulness of his statement. See *Commonwealth v. Blagman*, 458 Pa. 431, 326 A.2d 296 (1974). At the end of this test, he readily admitted some details in the first statement were not correct and proceeded to give the second statement, which he insisted related the true facts.

In view of all the circumstances, we are not persuaded this second statement was the product of "unnecessary delay" as contemplated in *Futch*. Cf. *Commonwealth v. Boone*, supra; *Commonwealth v. Coley*, 466 Pa. 53, 351 A.2d 617 (1976) (plurality opinion); and, *Commonwealth v. Young*, 460 Pa. 598, 334 A.2d 252 (1975).

Finally, the third statement was clearly a truly spontaneous utterance and, since it was not the fruit of or an exploitation of prior improper police action, it was properly admitted in evidence for the factfinder's consideration.

Judgments affirmed.

ROBERTS and MANDERINO, JJ., dissent.