411 A.2d 760

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey PRESLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 23, 1979.

Filed Oct. 5, 1979.

James J. Binns, Philadelphia, for appellant.

Paul S. Diamond, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania are sitting by designation.

HONEYMAN, Judge:

Appellant was convicted of murder in the third degree and conspiracy after a jury trial. Post trial motions were refused and appellant received a sentence of five years to twenty years imprisonment for the murder plus a consecutive one year to ten year term in prison for the conspiracy. It was further directed that both sentences were to run consecutively to any other sentence that appellant was then serving. From judgments of sentence these appeals were taken. Appellant challenges only the sufficiency of the evidence to support his convictions and the admissibility of his statements.

With respect to the issue concerning the sufficiency of the evidence, the following is a fair summary of the salient facts. On the evening of June 28, 1976, appellant and Clarence Barnes, both members of the "Taylor Street Gang," along with other gang members, went to the 1600 block of Ringgold Street in Philadelphia. Appellant's motivation for going was to settle a grudge with one, Clarence Richardson, stemming from an earlier stabbing incident. The group encountered his brother, Lionel Richardson, sitting on a stoop with some friends. An argument ensued about Clarence Richardson and appellant became angry and challenged Lionel and then a friend of Lionel's to a fight. They refused and the Taylor Street Gang withdrew to the 1400 block, where one of them obtained a gun. Clarence Barnes took the gun for the avowed purpose of shooting Lionel and/or his friends, and led the Taylor Street Gang back to the 1600 block. Appellant was immediately beside Barnes when he fired the gun a number of times at Lionel. Lionel was killed by a shot in the back of the head. Appellant, at the scene, threatened a witness, telling him not to "tell something . . . or I'll get you." Appellant received a flesh wound in the right arm from a bullet fired by an unknown or unidentified person.

■ Viewing the facts in a light most favorable to the Commonwealth, with all reasonable inferences flowing therefrom belonging to the Commonwealth, there was ample

evidence to support the verdict. Appellant contended that he was merely present at the scene of the slaying. The evidence shows that he certainly was present, but it also shows that he was an active participant in an ongoing criminal conspiracy with his fellow gang members that culminated in the murder of Lionel Richardson. Thus, he was equally culpable with Barnes therefor. See *Com. v. Dussinger*, 478 Pa. 182, 386 A.2d 500 (1978) and *Com. v. Mobley*, 467 Pa. 460, 359 A.2d 367 (1976).

The other basis for this appeal is that it was error to admit into evidence the statements obtained by the police from appellant because he did not knowingly and intelligently waive his *Miranda* rights and because the statements were the product of an unnecessary delay between his arrest and arraignment. The following sequence of events took place after Richardson was killed and appellant was wounded. Appellant was taken to the hospital by police at 9:10 p. m. and given emergency treatment. At 11:10 p. m. he was transferred to the Police Administration Building and placed in an interrogation room. He was warned of his *Miranda* rights at 11:35 p. m. and he waived them, whereupon interrogation by the police began. Appellant appeared to be alert and responsive and made no complaints about being in distress or in need of further medical attention. Appellant at that time was 19 years of age. His mother was with him at the hospital and accompanied him to the Police Administration Building. However, there she was prevented from further speaking with her son. A formal signed written statement was commenced at 11:35 p. m. and executed by appellant at 4:30 a. m. on June 29th. After that, appellant was left alone until 6:30 a. m. when he was moved to a cell. At 7:20 a. m. he was returned to the interrogation room and informed that Lionel Richardson had died and that he could be charged with murder. When asked if he wished to add to his previous statement, appellant merely replied "I didn't do it." His arraignment took place at 12:45 p. m. on June 29, 1976. At the conclusion of a suppression hearing, the motion to suppress the statements was refused, based upon findings

that appellant had knowingly and intelligently waived his *Miranda* rights and that there was no nexus between the delay in his arraignment and the taking of the statements.

In reviewing the findings and decision of the suppression judge, we must consider the Commonwealth's evidence and so much evidence presented by the accused as remains uncontradicted. See *Com. v. Cornish*, 471 Pa. 256, 370 A.2d 291 (1977). Doing so, we see no basis to overturn his decision. Since the appellant was an adult, the denial of his mother's presence during his interrogation was not a controlling factor. The wound he suffered in the fray required minimal emergency care and did not interfere with his alertness or thought processes. He was fully informed of all of his rights and he expressed no desire to exercise any of them. Finally, he makes no contention that the police resorted to force, trickery, deception, or any other improper means during his interrogation. See *Com. v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975) and *Com. v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978). The two principal cases upon which appellant places reliance, viz. *Com. v. Walker*, 470 Pa. 534, 368 A.2d 1284 (1977) and *Com. v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976), are factually distinguishable.

■ This case is not governed by the "six hour rule" enunciated in *Com. v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). Therefore, the principles set forth in *Com. v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and *Com. v. Williams*, 455 Pa. 539, 316 A.2d 888 (1974) apply to the events herein. Although it could well be contended that appellant was arrested when taken to the hospital by the police at 9:10 p. m., we do not believe that the Commonwealth is chargeable with any time prior to appellant's removal to the Police Administration Building at 11:10 p. m. He commenced his inculpatory statement about one-half hour thereafter and signed it approximately five hours thereafter. The actual interrogation period was less than four hours. Although his arraignment did not take place until thirteen and one-half hours after his removal to the police station, we see absolutely no nexus between such delay in arraignment and the

commencement of the inculpatory statement. The relative time period in evaluating appellant's *Futch* complaint is that between the arrest and the first self incrimination, which was either one-half hour or two and one-half hours, depending upon when we start the meter. See *Com. v. Carter*, 481 Pa. 495, 393 A.2d 13 (1978), wherein it was held that a period of two hours and twenty-five minutes did not violate the *Futch* rule. We need not concern ourselves with the second brief utterance by appellant some hours later, because it was merely an extension of the first statement, and, furthermore, was not inculpatory. Therefore, no error was committed in admitting into evidence the statements of appellant.

Judgments of sentence affirmed.