475 A.2d 754

**COMMONWEALTH of Pennsylvania**

v.

**Michael FREDERICK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 21, 1983.

Filed April 13, 1984.

Lawrence Pauker, Norristown, for appellant.

J. William Ditter, III, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence after a jury verdict of guilty of murder in the third degree. Appellant raises the following fourteen issues in this appeal:

I. DID THE LOWER COURT ERR IN FINDING THAT THERE WAS PROBABLE CAUSE TO ARREST THE APPELLANT?

II. DID THE LOWER COURT ERR IN FAILING TO SUPPRESS EVIDENCE OF THE APPELLANT'S

ORAL STATEMENTS TO THE POLICE, AND CON-
CLUDING THAT SAID STATEMENTS WERE VOL-
UNTARILY, KNOWINGLY AND INTELLIGENTLY
MADE?

III. DID THE LOWER COURT ERR IN FAILING TO
GRANT APPELLANT'S MOTION TO SUPPRESS
THE TESTIMONY AND ORAL STATEMENT OF
BELTON LIVINGSTON?

IV. WAS THE VERDICT CONTRARY TO THE
WEIGHT OF THE EVIDENCE AND AGAINST THE
LAW?

V. DID THE LOWER COURT ERR IN ADMITTING
CERTAIN COMMONWEALTH EXHIBITS INTO EVI-
DENCE AND ALLOWING SAME TO GO OUT WITH
THE JURY DURING DELIBERATIONS?

VI. DID THE LOWER COURT ERR IN ALLOWING
LEWIS BRENNER, A FORENSIC CHEMIST TO
GIVE AN EXPERT OPINION ON THE MUZZLE–TO–
TARGET DISTANCE?

VII. DID THE LOWER COURT ERR IN ALLOWING
THE APPELLANT TO BE CROSS–EXAMINED CON-
CERNING HIS PRIOR USE AND PURCHASE OF
THE WEAPON USED BY THE APPELLANT?

VIII. DID THE LOWER COURT ERR IN INSTRUCT-
ING THE JURY THE TRIVIAL BLOWS WERE IN-
SUFFICIENT TO CONSTITUTE PROVOCATION
SUFFICIENT TO FIND VOLUNTARY MAN-
SLAUGHTER?

IX. DID THE LOWER COURT ERR IN INSTRUCT-
ING THE JURY THAT MALICE MAY BE IMPLIED
FROM THE USE OF A WEAPON ON A VITAL PART
OF THE HUMAN BODY?

X. DID THE LOWER COURT ERR IN GIVING ADDI-
TIONAL INSTRUCTIONS TO THE JURY A SECOND
TIME OF THE ELEMENTS OF MURDER IN THE
THIRD DEGREE AND VOLUNTARY MANSLAUGH-
TER ONLY?

XI. DID THE LOWER COURT ERR IN REFUSING CERTAIN OF THE APPELLANT'S POINTS FOR CHARGE?

XII. WAS APPELLANT'S COUNSEL INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF THE BILL OF INFORMATION NOT HAVING BEEN PROPERLY SIGNED BY THE DISTRICT ATTORNEY?

XIII. DID THE LOWER COURT ERR IN ITS FAILING TO RAISE THE ISSUE OF THE BILL OF INFORMATION NOT HAVING BEEN PROPERLY SIGNED BY THE DISTRICT ATTORNEY?

XIV. WAS THE LOWER COURT'S SENTENCE UNDULY HARSH AND EXCESSIVE?

We find that thirteen of appellant's issues do not merit relief, but because we are unable to determine from the record before us whether the sentence was excessive, we vacate the judgment of sentence and remand for resentencing.

This case arose from the shooting death, on October 5, 1979, of one Robert Matson. On October 8, 1979, appellant was arrested in connection with the crime and charged, *inter alia*, with murder. After disposition of pre-trial motions, including a motion to suppress evidence, trial began on April 8, 1980. The jury found appellant guilty of third degree murder on April 15, 1980. Post-verdict motions were filed and denied and appellant was sentenced to a term of ten to twenty years imprisonment. This appeal followed.

## *Issues I–III*

Appellant contends that the court below erred in finding that probable cause existed to arrest appellant and in not suppressing a statement of a witness and statements of his own obtained as a result of this arrest as "fruits of the poisonous tree." He also argues that his own statements should also have been suppressed because they were not voluntarily, knowingly, and intelligently made.

■■■ Initially, we note that in reviewing the rulings of a suppression court, we may not disturb factual findings supported by the record or legitimate inferences and conclusions based on those findings of fact. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). Our assessment of support in the record is to be made considering only the evidence of the prosecution's witnesses and so much of the defense evidence as fairly read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hunt*, 280 Pa.Super. 205, 421 A.2d 684 (1980).

Viewed thusly the record supports the following:

On October 5, 1979, Robert Matson was found lying on a street corner with a single bullet wound to the chest. The police were told by a witness that he had earlier observed a car at this corner and that a man had been leaning into the passenger window. This man then had dropped a paper bag, extended his hands into the air and backed away from the window as the driver extended his hands in the man's direction. The witness had heard a shot and then had circled the block. When he returned, the victim was lying in the street. Another witness to the shooting described the car as a Javelin, although other descriptions of it were also given to the police. Witnesses also reported that the occupant of the car was a white male with neck length hair and a large build.

On October 7, 1979, the police were informed by one Coleen Sullivan that at 3:00 a.m. on October 5, 1979 she had received a phone call from appellant who had stated: "Wake up. It's very important because I shot someone and I want you to say that my car was parked outside all evening, if anyone comes around."

She also told the police that appellant operated a Javelin and that he always carried an automatic gun. The police had previously learned that the victim had been shot with a .32 caliber automatic pistol. The police also obtained a photograph of appellant showing him to be a white male with dark, neck-length hair.

On November 8, 1979, five police officers approached appellant as he was walking down a street. Two officers who had their guns drawn identified themselves and patted appellant down for weapons. He was then told he was under arrest and placed in a police vehicle where he was advised of his *Miranda* rights. After arriving at the County Detective's Office, appellant was asked if he wanted to make a statement and proceeded to answer questions for approximately twenty-one minutes. The questions ceased when appellant indicated that he wanted to speak to a friend of his, Belton Livingston. While awaiting the arrival of Belton Livingston, a police officer reduced the questions and answers to a writing. During the questions, appellant was not under the influence of drugs or alcohol and appeared relieved and relaxed once he began making his statement. However, he did refuse later to give the police a written statement.

## Probable Cause

In *Commonwealth v. Jones*, 271 Pa.Super. 528, 532, 414 A.2d 379, 381 (1979), we stated the following standard for probable cause to arrest:

Probable cause to arrest existed if, at the time appellant was detained by the police, the facts and circumstances known to them and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that appellant had committed the shooting. *Commonwealth v. Powers*, 484 Pa. 198, 201, 398 A.2d 1013, 1014 (1979). The test is not one of certainties but one of probabilities dealing with considerations of everyday life. *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). The facts known must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

Appellant argues that there was no probable cause because the police were given various descriptions of the car driven by the suspect; the description of the suspect was equally applicable to large numbers of people; the telephone call to Colleen Sullivan did not name the time, date and location that the suspect had "shot someone"; and the police never asked appellant his identity before arresting him and the police did not testify that they believed the person they saw on the street matched appellant's description.

The weakness in appellant's argument is that he considers each factor in isolation and concludes that each would not support a finding of probable cause. However, "[i]n determining whether probable cause for an arrest exists, we must not focus on isolated factors, but must, rather, look at the totality of the circumstances surrounding the arrest." *Commonwealth v. Kinnon*, 308 Pa.Super. 28, 30, 453 A.2d 1051, 1052 (1982).

■ Instantly, the police were given a relatively limited number of descriptions of the suspect's car, one of which corresponded to the type of car driven by a man who phoned in his call to Sullivan on the evening of the shooting, admitted he had shot a man and clearly implied that he had done it that evening. Furthermore, appellant fit the admittedly general description of the suspect and carried the same type of weapon used in the shooting. Lastly, the police testified that they obtained a photograph of appellant before his arrest took place. It is certainly a reasonable inference from testimony that they relied on this description when they arrested appellant on the street even though such was not expressly stated in their suppression court testimony.[1] We conclude that these facts were more than sufficient to establish probable cause to arrest appellant.

1. Appellant would apparently have us believe that the police randomly arrested him on the street, but that he fortunately happened to be the individual for whom they were looking.

*Statements*

Initially, we note that, having concluded that the arrest was supported by probable cause, the statements of Belton Livingston, his testimony at trial, and appellant's statements were properly not suppressed as fruits of an illegal arrest.

Nevertheless, appellant also contends that his statements should have been suppressed as not voluntarily, knowingly and intelligently made. Although the lower court found that appellant was fully advised of his rights and the finding is supported by the record, appellant argues that due to the circumstances of his arrest he was in a condition of shock and nervousness such as to preclude a voluntary, intelligent, and knowing waiver of these rights. While we agree that the suppression court found that appellant was naturally shocked and nervous, it also found that there was no evidence to indicate that he was distraught or unbalanced. This finding is supported by the testimony of the police officers.

■ We therefore believe, as stated in *Commonwealth v. Tuck*, 322 Pa.Super. 328, 336, 469 A.2d 644, 648 (1983), that:

The mere fact that appellant was excited and emotional...does not compel us to conclude that appellant did not know what he was doing; quite the contrary, since the record establishes that he was alert, rational, responsive and sufficiently composed to enable him to validly waive his constitutional rights prior to making the statements.

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, we affirm the suppression court's denial of the motion to suppress since its determination that appellant intelligently and voluntarily waived his *Miranda* rights is amply supported by the record.[5]

---

[5] We note that findings of a suppression court relating to the mental competency of a defendant to waive his *Miranda* rights, if supported by the evidence, have been affirmed despite the presence of purported disabilities more serious than those alleged here. *Commonwealth v. Cornish*, 471 Pa. 256, 370 A.2d 291 (1977) (drug withdrawal); *Commonwealth v. Crosby*, 464 Pa. 337, 346 A.2d 768 (1975) (low I.Q. and

limited education); *Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973) (paranoid schizophrenic); *Commonwealth v. McQuaid,* 273 Pa.Super. 600, 417 A.2d 1210 (1980) (serious illness during hospitalization.[2]

## Issue IV

Appellant argues that the evidence was insufficient to support the verdict.[3] We note initially that:

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *The factfinder is free to believe all, part or none of the evidence. Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978).

*Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979) (emphasis added).

At trial, appellant attempted to establish that he had been acting in self-defense. He testified that: On the evening of October 5, 1979, he was approached in a bar by the deceased who made homosexual advances toward him; that the deceased told him that he had previously been confined

---

**2.** Appellant raises an additional argument, citing *Commonwealth v. Cost,* 238 Pa.Super. 591, 362 A.2d 1027 (1976), that appellant's refusal to give a written statement after his oral admissions demonstrated that the initial statement was not voluntary. Although *Cost* involved a situation in which the defendant refused to sign a waiver form, even if we were to assume that *Cost* is relevant to the instant case, we note that it holds that such a refusal is *not* dispositive of the issue of voluntariness. As in *Cost,* our review of the entire record satisfies us that appellant "was aware of his rights and voluntarily gave the oral statements now challenged." *Cost,* 238 Pa.Superior Ct. at 605, 362 A.2d at 1034.

**3.** Although appellant states this issue to be whether the verdict was contrary to the evidence, the weight of the evidence, and against the law, his argument solely concerns the sufficiency of the evidence.

in a mental institution in connection with a murder;[4] that the deceased accosted appellant in the bar's men's room; that when appellant was driving home he was stopped by the deceased who made further advances upon him; that the deceased pulled a knife, attempted to force his way into the car, and appellant was in fear of the deceased. There was also testimony that the deceased had a drinking problem and had been drinking that night.

However, the Commonwealth introduced evidence that no knife was ever found at the scene or on the deceased.[5] The Commonwealth also introduced evidence that: the deceased was more than three feet away from the gun when it was fired; it was fired in the direction of the victim's chest; and that there was no assault upon appellant.

■ Appellant makes two arguments as to the sufficiency of the evidence. First, he contends that the evidence was insufficient to refute his claim of self-defense. While there was certainly a conflict in the testimony as to the self-defense claim, "[t]he jury resolved this conflict in testimony ... in the Commonwealth's favor. This was an appropriate jury function and appellant will not be heard to complain." *Commonwealth v. Gardner*, 490 Pa. 421, 426, 416 A.2d 1007, 1009 (1980).

■ Appellant's second argument is that the Commonwealth did not prove that appellant had a specific intent to kill. The flaw in this argument is that appellant was convicted of third degree murder which does not require a specific intent to take life. See *Commonwealth v. Carter*, 481 Pa. 495, 393 A.2d 13 (1978). Only malice is required and that can be implied when a deadly weapon is directed to a vital part of the body. *Id.* Therefore, we find no merit to appellant's fourth issue.

**4.** It was stipulated at trial that the deceased had been arrested and charged with murder and arson on December 26, 1963 and had been committed to Fairview State Hospital until October 10, 1968 and from November 25, 1968 to July 8, 1971.

**5.** Appellant also testified that he had found the knife in his car the next day, but had thrown it into a river.

### Issue V

Appellant argues that various items of the victim's clothing which had bloodstains on them and a photograph of the deceased showing the bullet wound should not have been admitted at trial and allowed to go out with the jury during deliberations.

> The question of the admissibility of photographs of a corpse in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. To determine whether such photographs are admissible, we have utilized a two-tiered analysis. The trial judge must initially decide whether the photographs possess inflammatory characteristics. If they do not, the photographs are admissible as are any evidentiary items, subject to the qualification of relevance. If the photographs are deemed inflammatory, then the trial judge must decide whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of their inflaming the passions of the jurors. *Commonwealth v. Batty, supra* [482 Pa. 173, 393 A.2d 435 (1978)].

*Commonwealth v. Hudson,* 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980).

■ The fact that a photograph depicts the corpse of a victim does not render it inflammatory *per se.* "Rather the depiction must be of such a gruesome nature or be cast in such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 281, 372 A.2d 687, 697 (1977).

■ Instantly, appellant has made no argument whatsoever that the photograph was inflammatory; he has merely proceeded to the second tier of the analysis and argued that it did not serve any useful evidentiary purpose. Moreover, there is nothing of record to indicate that it was of a shocking or gruesome nature and it was certainly relevant to support the testimony of the Commonwealth's patholo-

gist, especially as to the trajectory and point of entry of the bullet. Under these circumstances, we cannot find that the trial court abused its discretion in admitting the photograph.

■■■ As to the bloodstained clothing, the test for admissibility of such demonstrative evidence is the same as that for photographs. *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977); see *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974).[6] Appellant's argument on this point suffers from the same weakness as his argument concerning the photograph. Also, the clothing was relevant for the same reasons as was the photograph. Thus, appellant's fifth issue merits no relief.[7]

## Issue VI

At trial, the Commonwealth called one Lewis Brenner to testify as an expert in forensic chemistry. He testified that he tested the victim's clothing for the presence of nitrites and found that they were not present. It was his expert opinion that since nitrites were not present, the muzzle to target distance was at least three feet.

Defense counsel objected, stating:

Your Honor, I object to it based on the fact that he has testified that he found nothing on the jacket, and that being so I don't believe he is entitled to express an opinion as to exact muzzle to target distance.

■■■ The trial court overruled the objection because the witness would only testify that the distance exceed three feet. We perceive no error in this ruling. However, appellant now advances several other arguments as to the

6. Bloodstains on clothing do not render it *per se* inflammatory. See *Martinez, supra* (Concurring Opinion).

7. Appellant also contends that the trial court erred in letting the items go out with the jury during deliberations. The items a jury may take with it upon retiring to deliberate are within the trial court's discretion. Considering the above discussion, we can find no abuse of that discretion. See *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975).

inadmissibility of the expert's opinion which essentially amount to a claim that there was not a proper foundation for the testimony. We find that this ground for objection has been waived. If a ground upon which an objection to testimony is based is specifically stated, all other reasons for exclusion are waived. *Commonwealth v. Ridall*, 280 Pa.Super. 316, 421 A.2d 740 (1980). Thus, we find no merit to this issue.

### Issue VII

Appellant argues that the Commonwealth's cross-examination was improper on the basis that it was irrelevant in light of his admission to the shooting and claim of self-defense. We disagree. Appellant had stated earlier that he was only vaguely familiar with how to operate a gun and had intimated that it had discharged accidentally. The testimony the Commonwealth sought to elicit concerning appellant's prior use and purchase of the weapon was certainly relevant to show his familiarity with it and thus rebut his claims of self-defense and accident. Therefore, we find no error in the trial court's ruling.[8]

### Issues VIII–X

Appellant next asserts several errors in the trial court's instructions to the jury. The controlling law was set out in *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). There the Supreme Court stated the following:

This Court has consistently held that, in reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that

---

**8.** Appellant also claims that the testimony should have been precluded because it implied prior criminal activity. This point is waived since it was not stated to be a ground for the objection below. See *Ridall*, supra. Even had it not been waived, our review of the testimony reveals nothing from which we believe a juror could reasonably infer that appellant had engaged in prior criminal activity. See *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972).

controls. *See Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972).

*Id.*, 483 Pa. at 4, 394 A.2d at 510.

■■■ Appellant first argues that the lower court erred in instructing the jury that trivial blows were insufficient to constitute provocation which would reduce murder to manslaughter because such a charge was contrary to the evidence. We disagree. We note first that the court charged only that a trivial battery *may* constitute insufficient provocation. The Commonwealth clearly raised a question as to the extent of the deceased's assault, if any, upon appellant, particularly as to whether the deceased possessed a knife. Voluntary manslaughter requires serious provocation, *Commonwealth v. Miller*, 473 Pa. 398, 374 A.2d 1273 (1977), and it was certainly within the province of the jury to determine the extent of any assault and whether it was sufficient to constitute serious provocation. Thus, we find no error in this portion of the charge.

Appellant next claims the court erred in its instruction that malice may be implied from the use of a deadly weapon on a vital part of the human body because the evidence did not indicate that the gun was so used, but that the bullet struck the victim's arm. We find this contention to be utterly meritless. The Commonwealth's pathologist testified that the bullet *grazed* the deceased's arm which was held across his chest before it entered the chest cavity. As stated by our Supreme Court in *Commonwealth v. Padgett*, 465 Pa. 1, 5, 348 A.2d 87, 88 (1975):

> We are not persuaded that it must be shown that the bullet fired from a revolver, a deadly weapon, initially entered a vital organ before the inference of specific intent to kill can arise. The firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt.

The next issue raised by appellant is that the lower court erred in giving additional instructions for a second time only in regard to murder of the third degree and voluntary

manslaughter. During the jury's deliberations, it twice requested a clarification of the court's instructions on third degree murder and manslaughter. Defense counsel objected to a third charge on these offenses and, after the objection was overruled and the instructions given, requested that they also be instructed on the element of intent as it relates to third degree murder.

Appellant cites no authority for his proposition that the simple fact itself of a third instruction pursuant to the jury's request on these charges constituted error and we see no reason why such would be the case. It is the duty of the court to clarify issues for the jury, *Commonwealth v. Litman*, 276 Pa.Super. 114, 419 A.2d 121 (1980), and we certainly perceive no prejudice to appellant in its having done so.

As to appellant's second ground for objecting, we note that as discussed earlier in this opinion, specific intent is not an element of third degree murder. See *Carter, supra.* Thus we find this issue to be without merit.[9]

## Issue XI

Appellant contends that the following points for charge should have been read to the jury:

5. In determining the defendant's state of mind, you may take into account and consider the deceased's past conduct and treatment of defendant. *Commonwealth v. Boone,* [467 Pa. 168] 354 A.2d 898 (1975); *Commonwealth v. Darby,* [473 Pa. 109] 373 A.2d 1073 (1977).

21. When, as in this case, there is evidence that the defendant did not intend to kill the deceased and that there was a struggle between defendant and the deceased when the gun went off, you must consider whether the defendant's actions were so reckless or grossly negligent that they represent a departure from

---

**9.** Appellant also argues that the additional charge should have been expanded to include murder generally and the defenses of self-defense and justification. He did not raise this ground for his objection below and, thus, it has been waived. See *Ridall, supra.*

prudent conduct which evidences a clear disregard for human life and an indifference to the consequence.

34. The use of deadly force is justifiable where the defendant believes that such force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat. Such use of deadly force is not justifiable where the defendant knows that he can avoid the necessity of using such force with complete safety by retreating.[10]

 We note initially that a trial court is not required to accept requested points for charge verbatim, even though they may be legally correct; the court may use its own language so long as the applicable law is clearly, adequately, and accurately explained to the jury. *Commonwealth v. Sisco,* 484 Pa. 85, 398 A.2d 955 (1979).

As to point 5, we find that the court adequately dealt with this state of mind issue in the portions of its charge dealing with voluntary manslaughter and self-defense. In particular, the court charged that "an accumulation of events, beginning in the recent past may create sufficient provocation."

 As to point 21, we find that jury was given a full and adequate charge on involuntary manslaughter and that there exists no requirement that the court deal with specific factual issues as requested by appellant.

 As to point 34, although the use of deadly force is justifiable when a defendant believes that it is necessary to protect himself from kidnapping or sexual intercourse, 18 Pa.C.S.A. § 505(b)(2), we do not believe such a charge would have been supported by the evidence. "[A] trial court should not instruct the jury on legal principles which have

10. Appellant also challenges the lower court's denial of his point for charge No. 22. However, appellant did not object to the court's refusal to read the instruction before the jury retired to deliberate and it has thus been waived. *Commonwealth v. Rineer,* 310 Pa.Super. 241, 456 A.2d 591 (1983); Pa.R.Crim.P. 1119(b).

no application to the facts presented at trial." *Commonwealth v. White*, 490 Pa. 179, 182, 415 A.2d 399, 400 (1980).

### Issue XII

■ Appellant argues that trial counsel was ineffective for failing to challenge the bills of information as being improperly "rubber-stamped." However, we note that only the copies of these bills were rubber-stamped; the originals were manually signed by the District Attorney. In any event, the case of *Commonwealth v. Emanuel*, 285 Pa.Super. 594, 428 A.2d 204 (1981), rev. 501 Pa. 581, 462 A.2d 653 (1983) on which appellant relies, was not decided until after the trial of this case. Trial counsel cannot be held ineffective for failing to predict changes in the law. *Commonwealth v. Turner*, 309 Pa.Super. 330, 455 A.2d 185 (1983). Thus, this issue is meritless.

### Issues XIII–XIV

■ Appellant contends that the sentencing court erred in failing to adequately state its reasons for the sentence on the record and that the sentence it imposed was excessive. We note first that although the sentencing judge did not announce his reasons on the record in compliance with *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), that failure has been waived as a separate issue. Appellant failed to raise it in his motion for modification of sentence and it has thus not been preserved for appeal. See *Commonwealth v. Martin*, 328 Pa.Super. 498, 477 A.2d 555 (1984) (en banc).

■ However, we find that the excessiveness issue has been properly preserved. Furthermore, we are unable to decide that issue from the record before us. Thus, we will remand the case for resentencing in order for the lower court to place its reasons for the sentence upon the record. See *Martin, supra.*[11]

11. We recognize that it is arguable that since under *Martin*, the *Riggins* issue has been waived, the proper remedy now would not be to vacate the sentence and remand for resentencing. Instead, we

Judgment of sentence vacated and case remanded for resentencing. Jurisdiction relinquished.

conceivably could simply remand while retaining jurisdiction in order for the sentencing judge to prepare a written statement of his reasons for the sentence for our use in determining the excessiveness issue. We believe that this would not be a sufficient remedy had the *Riggins* issue been preserved. See *Commonwealth v. Mullen,* 321 Pa.Super. 19, 467 A.2d 871 (1983).

Instantly, however, the sentencing judge is no longer a member of the Montgomery County Court of Common Pleas. Therefore, we believe the appropriate remedy is to vacate the sentence and remand for resentencing.