J-A02039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL R. WESLING | |
| Appellant | No. 1386 EDA 2014 |

Appeal from the Judgment of Sentence March 28, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001697-2012

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY PANELLA, J.                **FILED JUNE 30, 2015**

Appellant, Daniel R. Wesling, appeals from the judgment of sentence entered March 28, 2014, by the Honorable Margherita Patti Worthington, Court of Common Pleas of Monroe County, after his jury conviction of rape by forcible compulsion, attempted rape, aggravated indecent assault, unlawful contact with a minor and related charges.  We affirm.

On June 29, 2009, the Commonwealth charged Wesling with multiple counts of sexual offenses he committed against K.B. and her sister, P.U., between January 1, 1990, and December 31, 2001.[1]  At trial, the sisters, who at the time the sexual abuse started were six and nine years old, respectively, testified to a protracted course of sexual assaults perpetrated

---

[1] The Commonwealth later amended the Information to cover the time between January 1, 1990 and November 5, 2000.

by Wesling over the span of a decade in both Pennsylvania and New Jersey. On October 9, 2013, a jury convicted Wesling of the aforementioned crimes. On March 28, 2014, following a hearing at which the trial court found Wesling to be a sexually violent predator, the court sentenced Wesling to an aggregate term of 15 to 30 years' incarceration. This timely appeal followed.

Wesling raises the following issues for our review:

I.     Was there not insufficient evidence that any of the acts which formed the basis of the charges for which Mr. Wesling was convicted occurred in Pennsylvania and thus was not the evidence insufficient to find Mr. Wesling guilty of any charges?

II.    Was not the evidence insufficient to prove beyond a reasonable doubt that Mr. Wesling committed rape or attempt[ed] rape of K.B., in that there was no evidence of penile penetration or an attempt to penetrate?

III.   Should not the sentences ono Counts 1 and 5 have merged?

Appellant's Brief at 4.

We have reviewed Wesling's issues raised on appeal, along with the briefs of the parties and the certified record. Having determined that the Honorable Margherita Patti Worthington's June 25, 2014 opinion ably and comprehensively disposes of Wesling's issues raised on appeal, with appropriate reference to the record and without legal error, we will affirm on the basis of that opinion.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/30/2015

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     : NO. 1697 CRIMINAL 2012
                                 :
          v.                       :     1386 EDA 2014
                                   :
DANIEL R. WESLING,                   :
          Appellant             : 1925(a) STATEMENT

## STATEMENT PURSUANT TO Pa. R.A.P. 1925(a)

We submit this Statement to the Appeal of Daniel R. Wesling (hereinafter "Appellant")

from the Judgment of Sentence in the above captioned case dated March 28, 2014. On April 7,

2014, Appellant filed a timely Post-Sentence Motion seeking time credit against his sentence.

By Order of this Court dated April 22, 2014, said Motion was granted. On May 2, 2014,

Appellant filed the instant direct appeal, challenging this Court's jurisdiction, the sufficiency of

the evidence adduced at trial concerning his Rape and Attempted Rape convictions, and the

legality of the consecutive sentences imposed on Amended Count One (1) and Counts Five (5)

and Fifteen (15) of the Criminal Information. The relevant facts and procedural history of this

case are summarized as follows:

In 2009, Pocono Mountain Regional Police were contacted by investigators in Broward

County, Florida, with information that Appellant may have sexually assaulted the victims in the

above captioned case, sisters K.B. and P.U.,[1] over a period of time spanning about a decade

when the two women were minors. Police interviews were conducted, resulting in the

---

[1] K.B.'s date of birth is November 5, 1984. P.U. was born on May 7, 1981.

Commonwealth filing a criminal complaint on June 29, 2009, charging Appellant with seventy-two (72) various sex offenses.

At the time of the filing of the criminal complaint, Appellant was incarcerated in Florida, pending trial on other sexual assault charges.[2] A detainer was lodged against Appellant on July 1, 2009, and after the resolution of Appellant's case in Florida, Appellant was extradited to Pennsylvania where he posted bond on July 26, 2012.

Also on July 26, 2012, Appellant waived his preliminary hearing under the counsel of Ms. Robin A. Spishock, Esq. of the Monroe County Public Defender Office. Appellant waived formal arraignment on September 24, 2012. On October 5, 2012, a Criminal Information was filed against Appellant charging him with twenty-nine (29) various sex offenses.

On February 27, 2013, Mr. George H. Newman, Esq. entered his appearance on behalf of Appellant. On March 13, 2013, Mr. Jack Fuchs, Esq., and Mr. Michael Salnick, Esq., were both granted *pro hac vice* admission for the purpose of representing Appellant.

On April 9, 2013, Appellant filed numerous Motions to Dismiss and a Motion for a Bill of Particulars. That same day, the Commonwealth filed its Notice pursuant to Pennsylvania Rule of Evidence 404(b) of its intent to introduce prior bad acts including the allegations of sexual assault in the State of Florida. On April 18, 2013, Appellant filed a Motion to Preclude the Commonwealth from introducing such 404(b) evidence. On May 14, 2013, the Commonwealth filed a Supplemental Notice of Prior Bad Acts indicating its intent to introduce evidence that Appellant sexually abused K.B. and P.U. in the State of New Jersey.

---

[2] Appellant was arrested in Broward County, Florida on April 2, 2009, on charges that he sexually assaulted several minors there. Following a jury trial, Appellant was acquitted of those charges on June 15, 2012.

2

A hearing on Appellant's Pre-Trial Motions was held on May 14, 2013. Following the hearing, and in consideration of subsequently submitted briefs, this Court issued an Opinion and Order dated July 19, 2013 denying Appellant's Motions, which we incorporate here.

On September 19, 2013, Appellant filed several Motions in Limine.[3] On September 20, 2013, the Commonwealth also filed several Motions in Limine.[4] By three separate Orders dated October 2, 2013, Appellant's Motions in Limine were denied.

Jury trial commenced on October 7, 2013. The Commonwealth rested at the end of the first day. At the close of the Commonwealth's evidence, Appellant moved for a Judgment of Acquittal on all twenty-nine (29) counts. In response to this Motion, Count One (1) of the Criminal Information was amended by the Commonwealth to cover January 1, 1990 through November 5, 2000; Counts Two (2), Three (3), Four (4), Eight (8), Ten (10), Eleven (11), Thirteen (13), Eighteen (18), Twenty (20), Twenty-One (21), Twenty-Two (22), Twenty-Four (24), Twenty-Five (25) and Twenty-Seven (27) were withdrawn by the Commonwealth, and; Counts Seventeen (17) and Nineteen (19) were dismissed by this Court.

After the defense rested on the second day of trial, Appellant renewed his Motion for a Judgment of Acquittal on the remaining counts. This Court granted Appellant's Renewed Motion with respect to Count Twenty-Nine (29). On October 9, 2013, the jurors returned from deliberation, finding Appellant guilty of ten (10) of the remaining twelve (12) counts.[5]

---

[3] These were entitled: Motion in Limine to Exclude the Testimony of P.U. or in the Alternative Request for Commonwealth to Disclose Methodologies used Regarding Witness P.U.'s Repressed/Renewed/Revived Memories; Motion in Limine to Exclude Testimony of P.U. until a Taint Hearing is Held, and; Motion in Limine Requesting Ruling Regarding Admissibility of Expert Testimony.

[4] These were entitled: Motion to Exclude Evidence of Non Testifying Witnesses; Motion to Exclude Irrelevant Evidence; Motion to Exclude Evidence of "Not Guilty" Verdicts, and; Motion to Exclude Evidence of Expert Testimony.

[5] These were:

3

On March 28, 2014, following a presentence investigation and a hearing wherein we found Appellant to be a sexually violent predator, Appellant was sentenced to incarceration for a total aggregate of not less than 180 months and not more than 360 months.[6]

On April 7, 2014, Appellant filed his Post-Sentence Motion, seeking additional time credit: Appellant requested that this Court grant him time served beginning on July 1, 2009, the date on which the Commonwealth lodged its detainer against him. On April 22, 2014, after a

---

Amended Count One (1), Rape by Forcible Compulsion (of K.B. between January 1, 1990 and November 5, 2000) (18 Pa.C.S.A. § 3121(a)(1)), graded as a first degree felony;

Count Five (5), Rape by Forcible Compulsion – Criminal Attempt (of K.B. between January 1, 1990 and December 31, 2001) (18 Pa.C.S.A. § 901(a)), graded as a first degree felony;

Count Six (6), Sexual Assault (of K.B. between June 1, 1995 and December 31, 2001) (18 Pa.C.S.A. § 3124.1), graded as a second degree felony;

Count Seven (7), Statutory Sexual Assault (of K.B. between June 1, 1997 and November 5, 2000) (18 Pa.C.S.A. § 3122.1), graded as a second degree felony;

Count Nine (9), Aggravated Indecent Assault, Person less Than 16 (of K.B. between June 1, 1995 to November 5, 2000) (18 Pa.C.S.A. § 3125(8)), graded as a second degree felony;

Count Twelve (12), Indecent Assault, Person less Than 16 (of K.B. between June 1, 1995 to November 5, 2000) (18 Pa.C.S.A. § 3126(a)(8)), graded as a third degree felony;

Count Fifteen (15), Contact/Communication with Minor – Sexual Offenses (of K.B. between December 19, 1997 and December 31, 2001) (18 Pa.C.S.A. § 6318(a)(1)), graded as a felony of the first degree;

Count Twenty-Three (23), Aggravated Indecent Assault, Person less Than 16 (of P.U. between June 1, 1995 to May 7, 1997) (18 Pa.C.S.A. § 3125(8)), graded as a second degree felony;

Count Twenty-Six (26), Indecent Assault, Person less Than 16 (of P.U. between June 1, 1995 to May 7, 1997) (18 Pa.C.S.A. § 3126(a)(8)), graded as a second degree misdemeanor, and;

Count Twenty-Eight (28), Corruption of Minors (of P.U. between January 1, 1990 and December 31, 2001) (18 Pa.C.S.A. § 6301(a)), graded as a first degree misdemeanor.

[6] On Amended Count One (1) of the Criminal Information, Appellant received a sentence of not less than seventy-eight (78) months, nor more than 156 months. On Count Five (5), Appellant received a sentence of not less than sixty (60) months, nor more than 120 months, to run consecutively to the sentence imposed for Amended Count One (1). No sentence was imposed on Counts Six (6), Seven (7), Nine (9) or Twelve (12) as these counts merged for sentencing purposes. On Count Fifteen (15), Appellant received a sentence of not less than eighteen (18) months, nor more than thirty-six (36) months, to run consecutive to the sentences imposed on Amended Count One (1) and Count Five (5). On Count Twenty-Three (23), Appellant received a sentence of not less than twenty-four (24) months, nor more than forty-eight (48) months, to run consecutively to the sentences imposed on Amended Count One (1) and Counts Five (5) and Fifteen (15). No sentence was imposed for Count Twenty-Six (26) as that count merged with Count Twenty-Three (23) for sentencing purposes. Lastly, on Count Twenty-Eight (28), Appellant received a sentence of not less than twelve (12) months, nor more than twenty-four (24) months, to run concurrently to the sentences previously imposed. Appellant was granted forty-one (41) days time credit.

4

hearing on Appellant's Motion, this Court granted said Motion and issued an Order amending the Sentencing Order. The instant appeal, filed on May 2, 2014, followed.[7]

In his Statement Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (hereinafter "1925(b) Statement"), Appellant raises three issues. First, Appellant complains that this Court lacked jurisdiction to sentence him, claiming that there was no evidence adduced at trial that any of the acts with which he was charged occurred in Pennsylvania. Secondly, Appellant challenges the sufficiency of the evidence as it relates to his convictions on Amended Count One (1) and Count Five (5), contending that there was no evidence to support a finding of penetration or attempted penetration. Lastly, Appellant complains that the sentences he received for Amended Count One (1), Count Five (5) and Count Fifteen (15) were illegal in that the offenses should have merged for sentencing purposes. We address each of these issues in turn.

In response to Appellant's first complaint, we note that the trial testimony of victims K.B. and P.U. were replete with statements that they were sexually abused by Appellant in this Commonwealth, and specifically, in Monroe County. In fact, one of the primary backdrops to this unfortunate story is the house where the victims grew up, 1120 Deer Trail Road, located in Pocono Pines, Monroe County, Pennsylvania, 18350.[8] K.B. and P.U. moved with their family from Livingston, New Jersey to Pocono Pines, Pennsylvania in the early 1990s when K.B. was about six (6) years old, and P.U. about nine (9). [N.T. 10/07/2013, pp. 22, 115]. K.B. and P.U. shared a bedroom in the Pocono Pines house in which their mother, father, grandmother, and their Aunt Dorothy, also resided. [N.T. 10/07/2013, pp. 65-66].

---

[7] For purposes of the present appeal, Appellant is represented solely by Attorney Newman. After a hearing on the issue, Attorneys Fuchs and Salnick were granted leave to withdraw as counsel for Appellant by Order of this Court dated April 21, 2014. Attorneys Fuchs and Salnick filed their respective Praecipes to Withdraw on May 7, 2014.

[8] *Accord.* N.T. 10/07/2013, p. 21. At the time of the offenses, this house was numbered 8 Gross Drive West. It has since been readdressed.

Prior to their move to Pennsylvania, Appellant became involved with the family through the sheer coincidence that he and the victims' grandmother, Hannah O'Neil, shared a work place: Between 1986 and 1988, Appellant worked for a New Jersey security systems company, Dictograph, sharing the 4 p.m. to 12 a.m. shift with Hannah O'Neil. [N.T. 10/08/2013, pp. 57-58]. From time to time, Hannah's daughter Dorothy would bring dinner to Hannah at Dictograph, which is how Dorothy and Appellant first met. Id. The two were soon dating and Appellant quickly became a close family friend. After the family moved to Pocono Pines, Appellant was a frequent guest at the Deer Trail Road house, spending nights in Dorothy's room. [N.T. 10/08/2013, pp. 61-62].

At trial, K.B. testified to a rather vivid memory of an incident which occurred at the Deer Trail Road house:

> I remember a really specific incident in Pennsylvania. I was wearing footie pajamas that–these white footie pajamas with little like colored dots on them, and I was too big for footie pajamas.
>
> I think I was 12, and it was one of those things where like I really wanted a pair, and they must have gotten them at like a specialty store or something because it's just not something you normally wear when you're 12.
>
> But I wanted those footie pajamas, and I remember I was just too tall for them, I mean, even wearing them at that point. I was too big for those footie pajamas. I was wearing them anyway, and I remember walking up the stairs at my – at the house that we lived in in Pocono Pines.
>
> I remember walking up the stairs and trying to be really quiet, and I don't remember who else was home. I think my aunt was working. But I remember trying to be really quiet because I knew that Danny [Appellant] was in my aunt's bedroom which you have to pass going up the stairs.
>
> And our kitchen is upstairs, so I was going up there for breakfast, and I was walking to the top of the stairs and turning to go to the kitchen. I remember Danny opening the door, and he started talking to me, and I don't remember exactly what he was saying, but he was telling me to come in and watch TV.

6

And I continued to the kitchen anyway, so I walked around to the kitchen, and I remember zipping my footie pajamas the rest of the way up and closing the top button. And then I – I don't even remember if I ate breakfast or anything like that, but I remember he was standing next to an island, a counter. I remember standing behind the counter, and he continued talking to me while we were upstairs, and I don't know.

I don't remember exactly how I got back there, but I was back in – I went back to my aunt's bedroom where he was staying, and we were laying there watching TV, and I don't remember what we were watching at all. And his hands started to move onto my stomach, and I remember just staring at the arm of my pajamas, and I saw these like colored dots that I can't even remember. But I – I just remember looking at the white spaces in between as his hand moved up to unzip and unbutton my pajamas.

And I stared even harder as he unzipped my pajamas even further, and I was just connecting like these racetracks on my pajamas in between the white spots and imagining that I was running up and down these little tracks that were on the arms of my pajamas. I was making white connections.

And he was – as he was unzipping, he was playing with my breasts, and then he unzipped my pajamas all the way. He was touching my vagina, and I just remember it being painful, and I just kept staring at the arm of my pajamas, and I – I think that's all I remember of that.

[N.T. 10/07/2013, pp. 29-31].

When asked whether there were other inappropriate contacts between herself and

Appellant, K.B. responded:

Yes. It happened – it happened multiple times. I don't have – not all the memories are as clear as the one that I was just describing.

I remember we have like a – it's still there now. We have this little cabinet in our kitchen, and I remember one time walking past, and he was standing by the cabinet, and he pushed me like up against the wall and pulled up my shirt, and he was playing with my breasts and pulling down my underwear. There were other incidents like that. There – there's just so many.

[N.T. 10/07/2013, p. 32].

7

The prosecution then asked K.B. to estimate how many times incidents like these would occur. Her answer was that it depended on how often Appellant visited the family in Pocono Pines:

> It would depend how often he was visiting. He lived with my family sort of. Like he would visit a lot, so sometimes he would stay there for a week or more. Sometimes he would be there two or three days a week. Sometimes he would just be there for a holiday, so it would depend.

[N.T. 10/07/2013, pp. 33-34].

Similarly, though admittedly perfunctorily, P.U. testified to incidents with Appellant at her parent's house on Deer Trail Road:

Q: Now, Paula, do you know anybody named Daniel Wesling?

A: Yes.

Q: Okay. And how do you know Daniel Wesling?

A: Because he was at the time a good friend of the family.

Q: Now, after you moved to Pennsylvania, did anything happen with Daniel Wesling that was inappropriate?

A: Yes.

Q. And what happened with Daniel Wesling?

A: He assaulted me, sexually assaulted me, raped, touched me in places he shouldn't have.

Q: Okay. You said he touched you in places he shouldn't have. What part of his body had touched what part of your body?

A: His hand touched my vagina. His penis touched my vagina.

Q: And you also said that he — I think you said he raped you as well?

A: Um-hum.

8

Q: Is that a yes?

A: Yes.

...

Q: And did his penis touch the outside or inside of your vagina?

A: Both.

Q: And did that happen one time or more than one time?

A: Multiple.

...

Q: Where would that occur, what location, at what house?

A: At my parents'.

[N.T. 10/07/2013, pp. 115-17].

Aside from the torment that these victims underwent in their parents' Pocono Pines house, another locus of the abuse testified to at trial was a house that Appellant bought in the late 1990s, located approximately one mile from the Deer Trail Road house. [N.T. 10/07/2013, p. 141; N.T. 10/08/2013, p. 69]. Accordingly, we believe ample testimonial evidence was adduced at trial establishing that the acts which formed the basis of the charges for which Appellant was convicted did in fact occur in this Commonwealth and we disagree with Appellant's vacuous claim to the contrary.

Appellant secondly complains that the evidence was insufficient to support his Rape and Attempted Rape convictions, Amended Count One (1) and Count Five (5) of the Criminal Information, respectively. The standard of review to be employed when a defendant challenges the sufficiency of the evidence on appeal has been set forth by our Supreme Court as follows:

9

When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Miller*, 572 Pa. 623, 632, 819 A.2d 504, 509 (2002) (quoting *Commonwealth v. Weiss*, 776 A.2d 958, 963 (Pa. 2001)).

We first address Appellant's Rape conviction. A person commits rape if he or she has sexual intercourse by forcible compulsion or by threat of forcible compulsion. 18 Pa.C.S.A. § 3121(a)(1). "Sexual intercourse" is defined as "intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. This "include[s] vaginal intercourse, anal intercourse, oral intercourse, and penetration by a foreign object, but not digital penetration of the vagina." *Commonwealth v. Kelley*, 569 Pa. 179, 188, 801 A.2d 551, 556 (Pa. 2002).

In his 1925(b) Statement, Appellant complains that K.B. never testified that Appellant's penis actually entered her vagina. We disagree and believe that the following testimony, especially when viewed in the light most favorable to the Commonwealth, sufficiently supports a finding beyond a reasonable doubt that Appellant's penis penetrated K.B.'s vagina, however slightly:

Q: Now, you were talking about different things that he did, touching you in your vagina, putting his finger inside you, oral sex. Did he also touch you – your vagina with other parts of his body?

A: Sometimes he would – he would like have me sit on top of him. I would like sit in his lap, and he would be laying down, so he would be reclined, and I would be sitting in his lap, and his penis would be like underneath or behind me while I was sitting there, so his penis would be like in the area of my vagina or my anus.

And I remember telling Dr. – or Detective Bohrman in the interview that probably just the tip would have gone inside my vagina just a little bit.

10

Q: And when he was doing that and he had you on top of him like you described, what were you doing?

A: It would depend on where his arms were mostly. But if he had his arms around me and he was trying to touch me or touch my vagina or touch my breasts, I would be wiggling or trying to move, but it would depend on whether or not his legs would fold my legs.

Sometimes he would have his legs like in a way where I couldn't necessarily move my legs, but I would – I would – I can't even explain it. I would just king of wiggle and move my body.

Q: Why would you wiggle and move your body like that when he was doing that stuff to you?

A: I was uncomfortable. I didn't – I didn't want it to happen. I didn't know how to get it to stop other than to move or complain that I had to go to the bathroom.

Q: Now, something like that with his penis touching your vagina, did that happen more than one time?

A: I can only remember his penis being in like the entrance of my vagina one time, but it would be – his penis would be in the area infrequently, like more than on time but not all the time.

[N.T. 10/07/2013, pp. 40-41].[9]

Alternatively, the jury may have found sufficient evidence to convict Appellant based on K.B.'s testimony regarding oral intercourse. As noted above, vaginal intercourse is not a necessary element of rape. Rather, the "sexual intercourse" element may be sufficiently supported by a finding of oral intercourse.

At trial, K.B. made the following statement: "He would touch both outside [my vagina], inside [my vagina], and inside [my vagina] with his fingers. Sometimes it would be with his mouth, and then sometimes his penis would be like in the area." [N.T. 10/07/2013 p. 34]. When

---

[9] Compare with *Commonwealth v. Trimble*, 615 A.2d 48 (Pa. Super. Ct. 1992) (testimony of five-year old victim that defendant placed his "wiener" in her "tooter" was sufficient to establish penetration and support a rape conviction).

11

asked more specifically about incidents of oral sex, K.B. recounted another rather vivid childhood memory of hers:

> I mean, I remember – I remember just – the memories kind of blur together. I remember one specific incident where – I don't remember how it began. My memory starts as I'm laying on my back in his bed at his parents' house.
>
> I was looking – he had little Garfield dolls on top of his TV stand. I was looking at the little Garfield dolls, and I just remember – I don't remember what kind of clothing I was wearing or anything. I just remember being really uncomfortable, and I remember a scratching feeling of his beard on my inner thighs and like right by where my vagina was.
>
> I remember all this – like I remember him kissing me like on my vagina, and I remember like this uncomfortable pressure. I just remember feeling like all of his uncomfortable pressure, and I didn't understand what was happening.

[N.T. 10/07/2013, p. 35].

Admittedly, Appellant's parents' house, where the described oral sex took place, is located in New Jersey. After she finished recounting her memory of this event, however, the Commonwealth asked her how many times similar incidents took place. To this, K.B. responded that "[i]t happened more than one time, but I couldn't give you a number." [N.T. 10/07/2013, p. 36].

In addressing Appellant's first complaint, we excerpted testimony regarding the frequency with which K.B. was victimized in the Deer Trail Road house throughout the course of her childhood. She stated that the incidents of abuse depended on how often Appellant was visiting the family in Pocono Pines [N.T. 10/07/2013, pp. 33-34], indicating that a large majority of the events occurred in Monroe County. Reading this testimony together with K.B.'s testimony regarding oral intercourse, we believe a jury could reasonably infer that incidents of

12

oral sex, such as the one she described, may have also occurred in Pennsylvania where Appellant was a frequent guest for approximately a decade before also becoming a neighbor.

We turn now to address Appellant's complaint that the evidence was insufficient to support his Attempted Rape conviction. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). The intent requisite for a Criminal Attempt conviction may be proven either by direct evidence, or inferred from circumstantial evidence. *Commonwealth v. Burton*, 770 A.2d 771, 784 (Pa. Super. Ct. 2001) (*quoting Commonwealth v. Cannon*, 443 A.2d 322, 324 (Pa. Super. Ct. 1982)). As to the *actus reus* element of Criminal Attempt, "[t]he substantial step test ... concentrate[es] on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Moss*, 852 A.2d 374, 383 (Pa. Super. Ct. 2004) (*quoting Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa. Super. Ct. 2003)).

As can be gleaned by the testimony excerpted above, K.B. testified at trial to numerous incidents between herself and Appellant—such as the footie pajama story, the time that Appellant pushed her up against the kitchen wall and began pulling down her underwear, and the occasions when Appellant made K.B. sit on him with his penis near or in the entrance to her vagina.[10] We believe that any one of these narratives or recollections are sufficient, especially

---

[10] K.B. also testified more generally that:

> Sometimes he would be more rough, so sometimes he would hold my arms or grab me in a particular way. He would often grab me inside of my thigh and just be really rough.
>
> And I remember like the – the inside of I think anyone's thighs are sensitive, or maybe it's just mine in particular, but I remember like just that feeling of pain. There was enough for me to know to stop moving or to stop wiggling . . . .

13

when viewed in the light most favorable to the Commonwealth, to support a finding that sometime between January 1, 1990 and December 31, 2001, Appellant committed an act which constituted a substantial step towards effectuating sexual intercourse with K.B. by forcible compulsion, with the intent to rape K.B.

We turn now to address Appellant's final complaint, that the sentences he received on Amended Count One (1), Rape by Forcible Compulsion, Count Five (5), Rape by Forcible Compulsion—Criminal Attempt, and Count Fifteen (15), Contact or Communication with a Minor – Sexual Offense, are illegal in that the underlying acts were the same for each count, so that the counts should have merged for sentencing purposes.

Initially, we note that merger is a pure question of law, subject to plenary review. *Commonwealth v. Pettersen*, 49 A.3d 903, 911 (Pa. Super. Ct. 2012) (*citing Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa. Super. Ct. 2007)). Pursuant to the merger statute: "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. According to our Superior Court:

> The preliminary consideration under Section 9765 is whether the two crimes at issue arose from a single act. This is because [our courts] have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply. Moreover, when determining whether a defendant committed a single act, such that multiple criminal convictions should be merged for sentencing, the proper focus is not whether there was a "break in the chain" of criminal activity, but rather, whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. The rationale is to prevent defendants from receiving a "volume discount" on crime.

[N.T. 10/07/2013, pp. 38-39].

14

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1050 (Pa. Super. Ct. 2011) (internal quotations omitted) (*citing Robinson*, 931 A.2d at 24-25 (Pa. Super. Ct. 2007)).

As to Appellant's Rape and Attempted Rape convictions, we acknowledge that, generally speaking, "an attempt to commit an offense, and the completed offense; the former merges into the latter." *Commonwealth v. Sparrow*, 471 Pa. 490, 503, 370 A.2d 712, 718-19 (1977) *overruled on other grounds by Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981). In this situation, however, there is no way of knowing whether the jury based their guilty verdicts for Rape and Attempted Rape on the same criminal act. Being that K.B. was exposed to her abuser for the majority of her childhood, she testified at trial to many, painful memories that she still carries with her today as an adult. As we discussed above with respect to Appellant's sufficiency of the evidence challenge, K.B. testified to at least two incidents from which a jury might have properly found Appellant guilty of Rape by Forcible Compulsion, and at least three incidents from which a jury might have properly found Rape by Forcible Compulsion – Criminal Attempt. Since there is no way of knowing upon which facts the jury based its verdicts, allowing the two convictions to merge for sentencing purposes would be to give Appellant a volume discount on crime.

Similarly, we do not believe that the sentence Appellant received for his conviction on Count Fifteen (15) of the Criminal Information, Contact or Communication with a Minor – Sexual Offense, should have merged with Amended Count One (1) and Count Five (5). On the Verdict Sheet, the interrogatory that accompanied Count Fifteen (15) asked the jury that "[i]f you find that the Commonwealth has proven this crime beyond a reasonable doubt, please indicate which, if any, of the crimes listed below, you believe constituted the unlawful act or acts that

15

form the basis of your determination." In response, the jury placed a check mark next to all six crimes listed: Rape, Attempted Rape, Sexual Assault, Statutory Sexual Assault, Aggravated Indecent Assault, and Indecent Assault. Accordingly, Appellant's Unlawful Contact conviction is not predicated solely on his conviction for Rape or Attempted Rape. Even if it were, however, they would not merge for sentencing purposes. *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. Ct. 2006) (holding that indecent assault and unlawful contact with a minor did not merge for sentencing purposes as offenses did not share the same elements; elements of unlawful contact consisted of intentionally, either directly or indirectly, contacting or communicating with minor for the purpose of engaging in indecent assault whereas the elements of indecent assault required touching of intimate parts for the purpose of arousing or gratifying a sexual desire in either person).

BY THE COURT:

_____
Margherita Patti-Worthington, P.J.

cc: Daniel Wesling
ADA – Michael T. Rakaczewski, Esq.
Defense Attorney – George Newman, Esq.
Clerk of Courts
MPW2014-0046

16